No. 23-1546

# United States Court of Appeals for the Federal Circuit

ALTRIA CLIENT SERVICES LLC,

*Plaintiff-Appellee,*

v.

R.J. REYNOLDS VAPOR COMPANY,

*Defendant-Appellant.*

Appeal from the United States District Court for the Middle District of North Carolina in No. 1:20-cv-00472-NCT-JLW, Judge N. Carlton Tilley, Jr.

## R.J. REYNOLDS VAPOR COMPANY'S CORRECTED COMBINED PETITION FOR PANEL REHEARING AND REHEARING EN BANC

| | |
|---|---|
| John A. Marlott<br>JONES DAY<br>110 North Wacker Drive<br>Suite 4800<br>Chicago, IL 60606<br>(312) 269-4236 | Jason T. Burnette<br>Laura M. Kanouse<br>JONES DAY<br>1221 Peachtree Street, N.E.<br>Suite 400<br>Atlanta, GA 30361<br>(404) 581-8724 |
| John Franklin Morrow, Jr.<br>WOMBLE BOND DICKINSON<br>One West Fourth Street<br>Winston-Salem, NC 27101<br>(336) 721-3584 | Alexis A. Smith<br>JONES DAY<br>555 South Flower Street, 50th Fl.<br>Los Angeles, CA 90071<br>(213) 489-3939 |
| *Counsel for Defendant-Appellant R.J. Reynolds Vapor Company* | *Additional counsel on inside cover* |

*(listing of counsel continued from front cover)*

Amelia A. DeGory
JONES DAY
51 Louisiana Avenue, N.W.
Washington, DC 20001
(202) 879-3939

*Counsel for Defendant-Appellant R.J. Reynolds Vapor Company*

## <u>CERTIFICATE OF INTEREST</u>

Case No. 2023-1546

*Altria Client Services LLC v. R.J. Reynolds Vapor Co.*

Filing Party/Entity: R.J. Reynolds Vapor Company

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: February 4, 2025        Signature:    */s/ Jason T. Burnette*

Name:        <u>Jason T. Burnette</u>

**1. Represented Entities** (Fed. Cir. R. 47.4(a)(1)) – Provide the full names of all entities represented by undersigned counsel in this case.

R.J. Reynolds Vapor Co.

**2. Real Party in Interest** (Fed. Cir. R. 47.4(a)(2)) – Provide the full names of all real parties in interest for the entities.  Do not list the real parties if they are the same as the entities.

Reynolds Asia-Pacific Ltd.

**3. Parent Corporations and Stockholders** (Fed. Cir. R. 47.4(a)(3)) – Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.

Reynolds American, Inc. (parent); British American Tobacco p.l.c. (publicly traded/owns > 10% stock of Reynolds American Inc.); RAI Innovations Company (directly held subsidiary of Reynolds American Inc. and the direct parent of R.J. Reynolds Vapor Company).

**4. Legal Representatives** – List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

- i -

Hill Ward Henderson
Emily C. Baker
Frank T. Bayuk
Marc S. Blackman
John R. Boulé III
Robert M. Breetz
William E. Devitt
Jesika W. French
Troy A. Fuhrman
Kenneth S. Luchesi
David M. Maiorana
Ryan B. McCrum
John M. Michalik
Amelia E. Murray
Ryan H. Niland
Stephanie E. Parker
Michael S. Quinlan
Gillian Schroff Raleigh
Michelle B. Smit
Nicole M. Smith
Emily J. Tait
Jack Williams, Jr.
John D. Wooten

**5. Related Cases** – Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

Yes. *See* Doc. 4 (Reynolds's Notice of Related Case Information); Doc. 69 (Reynolds's Updated Notice of Related Case Information).

**6. Organizational Victims and Bankruptcy Cases** – Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

Not Applicable

**TABLE OF CONTENTS**

**Page**

CERTIFICATE OF INTEREST ..................................................................i

TABLE OF AUTHORITIES ................................................................ iii

TABLE OF ABBREVIATIONS ............................................................vi

STATEMENT OF COUNSEL ...............................................................1

INTRODUCTION ................................................................................2

BACKGROUND ..................................................................................3

ARGUMENT .......................................................................................4

    I.     THE PANEL SHOULD GRANT REHEARING BECAUSE IT OVERLOOKED KEY POINTS OF FACT. .....................................4

    II.    REHEARING EN BANC IS WARRANTED. ..................................10

        A.    The En Banc Court Should Abandon "Built-in Apportionment" as an Exception to the *Garretson* Rule.........10

        B.    The En Banc Court Should Clarify That Mere Technological Comparability Does Not Establish Built-in Apportionment. ........................................................15

        C.    No Reliable Testimony Supported the Application of Built-in Apportionment in This Case....................................16

CONCLUSION ..................................................................................19

CERTIFICATE OF COMPLIANCE ....................................................21

ADDENDUM

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Apple Inc. v. Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) ...................................................................1, 12

*Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*,
967 F.3d 1353 (Fed. Cir. 2020) .............................................................1, 8, 13

*Commonwealth Sci. & Indus. Rsch. Org. (CSIRO) v. Cisco Sys., Inc.*,
809 F.3d 1295 (Fed. Cir. 2015) ....................................................1, 11, 15, 17

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993)....................................................................................1, 17

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006).........................................................................................11

*EcoFactor, Inc. v. Google LLC*,
No. 23-1101 (Fed. Cir.) ...........................................................................1, 2, 10

*Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*,
927 F.3d 1292 (Fed. Cir. 2019) .......................................................................12

*Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., Inc.*,
879 F.3d 1332 (Fed. Cir. 2018) ..................................................................17, 18

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018) .......................................................................14

*Garretson v. Clark*,
111 U.S. 120 (1884)..................................................................................*passim*

*Lucent Tech., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) .......................................................................15

*MLC Intell. Prop., LLC v. Micron Tech., Inc.*,
10 F.4th 1358 (Fed. Cir. 2021) ........................................................1, 13, 14, 17

# TABLE OF AUTHORITIES
(continued)

*Omega Pats., LLC v. CalAmp Corp.*,
  13 F.4th 1361 (Fed. Cir. 2021) ........................................................*passim*

*Pavo Sols. LLC v. Kingston Tech. Co.*,
  35 F.4th 1367 (Fed. Cir. 2022) .....................................................12

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
  30 F.4th 1109 (Fed. Cir. 2022) .................................................12, 15

*Uniloc USA, Inc. v. Microsoft Corp.*,
  632 F.3d 1292 (Fed. Cir. 2011) ...................................................11

*Utah Med. Prods., Inc. v. Graphic Controls Corp.*,
  350 F.3d 1376 (Fed. Cir. 2003) ...................................................15

*Vectura Ltd. v. GlaxoSmithKline LLC*,
  981 F.3d 1030 (Fed. Cir. 2020) ...................................................12

*Virnetx Inc. v. Cisco Sys., Inc.*,
  767 F.3d 1308 (Fed. Cir. 2014) .................................................12, 17

## OTHER AUTHORITIES

Federal Rule of Evidence 702........................................................1, 17

William F. Lee & Mark A. Lemley, *The Broken Balance:  How
  "Built-In Apportionment" and the Failure to Apply* Daubert *Have
  Distorted Patent Infringement Damages*,
  37 Harv. J. L. & Tech. 255 (2024)............................................10, 12

## <u>TABLE OF ABBREVIATIONS</u>

The following abbreviations are used in this petition.  All emphasis in this petition is added.

### *Parties*

| Abbreviation | Term |
|---|---|
| Reynolds | R.J. Reynolds Vapor Company |
| Altria | Altria Client Services LLC |

### *Citations*

| Abbreviation | Term |
|---|---|
| Appx___ | Joint Appendix at page(s)____ |
| ReynoldsBr. | Reynolds's Opening Brief, Doc. 14 |
| ReplyBr. | Reynolds's Reply Brief, Doc. 24 |
| Op. | Slip Opinion, *Altria Client Services LLC v. R.J. Reynolds Vapor Co.*, No. 23-1546 (Fed. Cir. Dec. 19, 2024), Doc. 66 |

### *Terms*

| Abbreviation | Term |
|---|---|
| Altria's patents | The '517 patent, the '269 patent, and the '541 patent, collectively.  These patents are variously referred to in the record as the "Hawes patents," the "pod patents," the "Asserted patents," or "Altria's patents." |
| Fontem | Fontem Ventures B.V. and Fontem Holdings 1 B.V. |
| Lee & Lemley | William F. Lee & Mark A. Lemley, *The Broken Balance:  How "Built-In Apportionment" and the Failure to Apply* Daubert *Have Distorted Patent Infringement Damages*, 37 Harv. J. L. & Tech. 255 (2024) |

**STATEMENT OF COUNSEL**

Based on my professional judgment, I believe this appeal requires an answer to a precedent-setting question of exceptional importance:  Whether the Court's "built-in apportionment" doctrine is contrary to the Supreme Court's rule in *Garretson v. Clark*, 111 U.S. 120 (1884), and should be overruled or at least limited to the unique circumstances presented in *Commonwealth Scientific & Industrial Research Organisation v. Cisco Systems, Inc.*, 809 F.3d 1295 (Fed. Cir. 2015) (*CSIRO*).  This issue was explicitly left open by this Court's December 4, 2024 en banc order in *EcoFactor, Inc. v. Google LLC*, No. 23-1101, Doc. 165. There, Google and numerous amici similarly urged this Court to address the issue.

Based on my professional judgment, I further believe that the panel decision is contrary to:

(1)    Federal Rule of Evidence 702(d) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993); and

(2)    this Court's decisions in *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960 (Fed. Cir. 2022); *Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361 (Fed. Cir. 2021); *MLC Intellectual Property, LLC v. Micron Technology, Inc.*, 10 F.4th 1358 (Fed. Cir. 2021); and *Bio-Rad Laboratories, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353 (Fed. Cir. 2020).

*/s/ Jason T. Burnette*, Counsel for Defendant-Appellant

## <u>INTRODUCTION</u>

The panel decision in this case affirmed a $95 million judgment for patent infringement against Reynolds based on its misapprehension of multiple key facts, including the basis for Altria's apportionment testimony and the text of the district court's apportionment jury instruction. The panel should grant Reynolds's petition for rehearing to fix these errors and, on a proper understanding of the record, grant a new trial.

Separately, the en banc Court should grant rehearing because this petition presents the Court with an ideal vehicle to re-assess its precedents on so-called "built-in apportionment"—an issue explicitly left open in the Court's en banc consideration of *EcoFactor*. Order (Dec. 4, 2024), No. 23-1101, Doc. 165. This Court's "built-in apportionment" precedents have strayed far afield from the Supreme Court's instruction in *Garretson v. Clark* that a patentee "must in every case give evidence tending to separate or apportion … between the patented feature and the unpatented features." 111 U.S. at 121. The panel's decision goes even further. It contravenes *Garretson* as well as this Court's precedents requiring that damages reflect only the value of the claimed invention, and therefore be apportioned between patented and unpatented features. Granting this petition also would permit the en banc Court to clarify that, contrary to the panel's decision, mere technological comparability cannot establish built-in apportionment.

While nonprecedential, the panel decision, if allowed to stand, will allow damages experts to bypass apportionment by relying solely on an opinion of technological comparability, and will permit a jury instruction suggesting that mere technological comparability suffices to establish built-in apportionment to become the standard in every patent case in the country. The panel, this Court, or both should grant review.

## BACKGROUND

This appeal challenges a $95 million judgment for patent infringement against the leading e-cigarette vapor device in the United States—Reynolds's VUSE Alto. Alto has an e-liquid cartridge—commonly called a "pod"—that inserts into a second component containing the battery. Appx31749; Appx31365; Appx29440. Altria, the other party here, owns three patents for a pod-style vapor device that it asserted against Reynolds's Alto. Appx1747; Appx156; Appx164; Appx167.

At trial, Altria's damages expert made selective use of two prior license agreements to non-party Fontem's entire patent portfolio of foundational e-cigarette technology to seek running royalties, and the jury adopted that royalty rate in its verdict. The panel exclusively relied on one of those licenses, between Fontem and Nu Mark, to uphold the royalty rate and Altria's experts' apportionment analyses. Op.8-12.

- 3 -

Altria's damages expert undisputedly did not perform an apportionment analysis and instead presented a theory of "built-in apportionment" based on the Fontem-Nu Mark license.  Appx28361-28363, Appx28388-28389.  Altria's technical expert testified that Altria's three related patents from a single patent family were all comparable to and more valuable than the entirety of Fontem's portfolio containing dozens of patents from more than a dozen distinct patent families.  Appx28187-28193.  But in doing so, Altria did not provide evidence of the value of Fontem's portfolio to its prior licensed products as compared to the value of Altria's patents to Alto.  Altria also ignored Alto's many non-infringing features, including its e-liquid composition, and failed to account for Reynolds's marketing, which has nothing to do with Altria's patents.

The jury awarded damages, and the district court upheld the jury's verdict. A divided panel affirmed, with Judge Bryson concurring in part and dissenting in part.

## **ARGUMENT**

### **I. THE PANEL SHOULD GRANT REHEARING BECAUSE IT OVERLOOKED KEY POINTS OF FACT.**

Aside from being fundamentally wrong for the reasons set forth in the petition for rehearing en banc, *see infra* Part II, the premises for the panel's holding that Altria's expert offered reliable apportionment testimony and that the court properly instructed the jury on apportionment are both based on

misapprehensions of the record. The panel should grant rehearing to correct these factual misunderstandings and remand for a new trial.

First, the linchpin of the panel's apportionment holding is that Altria's damages expert, "based on [Altria's] technical expert's testimony, concluded that the importance of the patented features to Nu Mark was similar to the technical importance of the patented features from Altria's patents to the VUSE Alto." Op.11. But there is no such testimony in the record—from either of Altria's experts. Absent such testimony, Altria failed to meet its burden to apportion, and the judgment should be vacated and a new trial ordered.

The panel states that "Altria's technical expert [Mr. McAlexander] concluded that the importance of the licensed patents to the Fontem-Nu Mark license were similar to the importance of Altria's patents to the hypothetical negotiation." Op.11. The panel points to two pieces of support for its conclusion: (1) That "Altria's technical expert examined the importance of the patents to the e-cigarette device licensed in the Fontem-Nu Mark license and concluded that, because the five patent families [he cites as relevant] covered the key features of an e-cigarette device, selling an e-cigarette device would necessarily require practicing Fontem's patents." Op.10-11 (citing Appx28188-28192). And (2) that "Altria's technical expert also testified that Altria's patents covered the key features of a pod vapor device and thus that selling a pod vapor device would

necessarily require practicing Altria's patents." Op.11 (citing Appx28192). But neither piece of support is in the record. As to the first piece, Mr. McAlexander did not examine the ***importance*** of the Fontem patents to the Nu Mark licensed products; he merely testified as to technical comparability of the Fontem patents to Altria's patents. *See* Appx28188-28192. And as to the second, Mr. McAlexander ***never*** testified—at Appx28192 or elsewhere—"that selling a pod vapor device would necessarily require practicing Altria's patents." Op.11. In fact, he provided testimony supporting the opposite conclusion: that not all pod vapor devices practice Altria's patents.

> Q. [W]hat is your opinion as to whether the Juul device practices th[e] pod patents?

> A. My opinion, technically, is it does not practice the pod patents.

Appx28195 (309:14-17); Appx28252 (366:22-24) (agreeing JUUL is a pod device). In light of this testimony, there is no support for the panel's conclusion that "Altria's technical expert concluded that the importance of the licensed patents to the Fontem-Nu Mark license were similar to the importance of Altria's patents to the hypothetical negotiation." Op.11.

Beyond that misunderstanding, the panel also stated that Altria's damages expert Mr. Malackowski "accounted for similar markets between the licensed e-cigarette device in the Fontem-Nu Mark license and Reynolds's VUSE Alto" because he "not[ed] that the VUSE Alto was 'a relatively significant success' and

that 'the sales of the prior products actually declined.'" Op.11 (quoting Appx28358 (434:19-22)). But Mr. Malackowski never compared the markets of the Fontem-Nu Mark licensed devices and the VUSE Alto. At the portion of his testimony the panel cites, Mr. Malackowski testified about "net sales of Vuse Alto, ***versus non-pod Vuse products***," i.e., Reynolds's products, Appx28358 (434:8-9)—not Nu Mark's licensed products.

Given these misapprehensions of the record, there is no basis for the panel's determination that Altria's damages expert properly apportioned because he "concluded that the importance of the patented features to Nu Mark was similar to the technical importance of the patented features from Altria's patents to the VUSE Alto." Op.11. Because Mr. McAlexander did not testify that selling a pod device would require practicing Altria's patents, there is no support in the record for the proposition that the technical importance of the Fontem-Nu Mark licensed technology is somehow similar to that of Altria's patents in the hypothetical negotiation. Likewise, because Mr. Malackowski did not testify about any similarities in the markets between the Fontem-Nu Mark licensed devices and the VUSE Alto, there is no support for the proposition that the Fontem patents' value to Nu Mark's licensed products was somehow proportionate to the value of Altria's patents to the VUSE Alto.

And it is precisely because Altria's experts did not provide this testimony that Altria failed meet its burden to apportion. As Reynolds explained in its briefing, ReynoldsBr.52-62; ReplyBr.20-28, under this Court's precedent, the type of testimony the panel thought was part of the record (but is not) is an example of what Altria needed to offer to support its theory that no quantitative adjustment of the Fontem-Nu Mark royalty rate was required. *See, e.g.*, *Bio-Rad*, 967 F.3d at 1377 (expert "assess[ed] whether the importance of [prior licensed] technology to the particular license was similar to the hypothetical negotiation," and the prior license contained the same "proportion of licensed/unlicensed features" such that it "was comparable to the present case"). The panel should grant rehearing on this basis alone and order a new trial that excludes this legally insufficient apportionment testimony.

Second, the panel incorrectly determined that the district court instructed the jury that, "if it found that Altria demonstrated *sufficient comparability* between the circumstances of the Fontem-Nu Mark license and the hypothetical negotiation, the jury could accept Altria's damages expert's proposed royalty rate." Op.12. That is not the instruction the district court gave. Instead, the district court provided the following instruction:

> In this case, if you find that the asserted patents are *technologically comparable* to the Fontem patents licensed as part of the Fontem-Nu Mark agreement and the Fontem-Reynolds agreement, then you may

assume that the value attributable to the patented invention (*i.e.*, apportionment) has already been baked into the comparable licenses.

Appx146. By instructing the jury that, "[i]n this case," Appx146, Altria only needed to show technological comparability for the jury to accept Altria's damages theory, the district court misstated the law and nullified the earlier portions of the instructions that discussed comparable agreements and the need to take into account differences between technologies and economic circumstances of a license agreement and the hypothetical license. Appx145. After all, a "jury is presumed to follow jury instructions," *Omega*, 13 F.4th at 1372, and the district court expressly instructed the jury that technological comparability is all that mattered "[i]n this case," Appx146.

As Reynolds explained, ReynoldsBr.62-68; ReplyBr.28-32, the jury instruction had prejudicial effect and that prejudicial effect would have remedied the error if a proper instruction had been given. This Court's precedent requires that the "principles of apportionment [be] effectively baked into [a] purportedly comparable license" to succeed on a built-in apportionment theory. *Omega*, 13 F.4th at 1377. And these principles require a party to "account for differences in the [1] technologies and [2] economic circumstances of the contracting parties." *Id.* at 1381. The panel's misstatement only underscores that an instruction focused on "***sufficient*** comparability"—precisely Reynolds's request—would have captured these concepts (if it were proper to give an instruction on built-in

- 9 -

apportionment, which it was not, *see infra*).  Op.12.  Because the district court's

apportionment jury instruction was prejudicial legal error, this Court should vacate

the district court's judgment and remand for a new trial on this separate basis.

## II. REHEARING EN BANC IS WARRANTED.

### A. The En Banc Court Should Abandon "Built-in Apportionment" as an Exception to the *Garretson* Rule.

This petition presents the issue explicitly left open by this Court's

December 4, 2024 en banc order in *EcoFactor*, No. 23-1101, Doc. 165, which

Google itself and numerous amici in that case urged this Court to address:

Whether so-called "built-in apportionment" is inconsistent with Supreme Court

precedent.  The Supreme Court has long held that patentees "must in every case

give evidence tending to separate or apportion the defendant's profits and the

patentee's damages between the patented feature and the unpatented features."

*Garretson*, 111 U.S. at 121.  *Garretson* recognizes just one exception to its "must

in every case" rule:  the entire-market-value rule, under which "the entire value of

the whole machine, as a marketable article, is properly and legally attributable to

the patented feature."  *Id.*  For this reason, and the reasons outlined in Lee &

Lemley, this Court "should end the 'built-in apportionment' exception to the

apportionment requirement," Lee & Lemley at 323.

Requiring experts to give evidence of apportionment, and not allowing

reliance on claims of "built-in apportionment" without the presentation of actual

evidence of apportionment, would not only honor *Garretson*, but it would also be consistent with the Supreme Court's and this Court's consistent rejection of "categorical rule[s]" and "rules of thumb" in cases like *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006) (rejecting "categorical rule" of presumed irreparable harm in permanent-injunction motions following infringement verdicts), and *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312-18 (Fed. Cir. 2011) (rejecting "the 25 percent rule of thumb" as "a fundamentally flawed tool for determining a baseline royalty rate in a hypothetical negotiation").

At minimum, the Court should confine its application to the strict factual predicates present in *CSIRO v. Cisco Systems, Inc.*, 809 F.3d 1295 (Fed. Cir. 2015). In *CSIRO*, the district court was presented with unique circumstances upon which it determined a reasonable royalty: it had evidence of prior negotiations between the ***same*** parties, regarding the ***same*** single patent for the ***same*** products. Under these particular circumstances, "this starting point for the district court's analysis already built in apportionment," or "[p]ut differently, the parties negotiated over the value of the asserted patent, 'and no more.'" *Id.* at 1303. Thus, apportionment was inherent in the prior negotiations for the same license.

Yet the Court's later decisions applying "built-in apportionment" have strayed far beyond these particular circumstances, applying it to prior licenses even

- 11 -

without complete identity between the patents, parties, or products.  *See, e.g.,* *Vectura Ltd. v. GlaxoSmithKline LLC*, 981 F.3d 1030, 1041 (Fed. Cir. 2020); *Pavo Sols. LLC v. Kingston Tech. Co.*, 35 F.4th 1367, 1380 (Fed. Cir. 2022); *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1301 (Fed. Cir. 2019).  As scholars have noted, this Court has "eased [its] scrutiny of licenses in damages analyses, thereby opening the door for implicit abandonment of the apportionment principle."  Lee & Lemley, *supra*, at 287.

The type of analysis allowed by the district court and the panel here would work yet another unwarranted extension to "built-in apportionment," effectively eliminating the rule that damages for patent infringement must be apportioned "in every case."  *Garretson*, 111 U.S. at 121; *Virnetx Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014).

First, the dozens of patents from at least a dozen families licensed under the two Fontem agreements were far more numerous than Altria's three patents from one family.  Appx14609-14614; Appx28868.  That disparity alone should have precluded built-in apportionment.  *See, e.g.*, *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1123 (Fed. Cir. 2022); *see also Apple*, 25 F.4th at 972-73 (comparability not shown where, among other things, expert relied on prior licenses involving multiple patents); *MLC*, 10 F.4th at 1368, 1375 (rejecting built-in apportionment where reference agreement "granted a license to a

portfolio of forty-one U.S. and international patents and patent applications, and only one of those forty-one patents is at issue in the hypothetical negotiation"). The panel did not address this issue.

Second, the licensed Fontem patents are foundational to the e-cigarette industry; Altria's patents are not. Fontem's patents were licensed to at least 17 different e-cigarette companies, and the accused Alto itself is marked with 39 Fontem patents, Appx14570. Altria's patents, by contrast, were not licensed for royalties to anyone, and Altria itself never alleged that anyone other than Reynolds (not even Altria) used them in any commercial product. Appx6836; Appx28091-28093; Appx28195; Appx28251. Of course, the panel erroneously asserted that pod vapor devices required Altria's patents, but as shown above, not even Altria took that position. *See supra* 5-6.

Third, Altria failed to present evidence that the proportion of the value of Fontem's patents to the prior Fontem-licensed products is the same as Altria's patents to Alto, as required to claim "built-in apportionment" based upon prior licenses to different patents. *See Bio-Rad*, 967 F.3d at 1377. Here, no witness compared the use and importance of the licensed Fontem portfolio to prior licensed products of Reynolds and Nu Mark with the alleged use of Altria's patents in Alto, leaving the jury no basis for comparison. *See MLC*, 10 F.4th at 1374-75. Again,

- 13 -

the panel erroneously asserted otherwise, *see supra* 5-8, and once that error is corrected, this circumstance precludes built-in apportionment.

Fourth, there is no dispute that Alto has numerous non-infringing features and conventional components that require apportionment, but Altria's experts did not account for any of those non-Altria-patent related features. Specifically, Mr. McAlexander's pretrial admissions that "there are a number of contributors to the success" of Alto that have nothing to do with Altria's patents, Appx14487-14492; Appx14524-14525, and his failure to account for those differences should have rendered the built-in apportionment opinions inadmissible. *See, e.g.*, *Omega*, 13 F.4th at 1377 (rejecting built-in apportionment where "there is no question that the [products] have conventional components that are not the inventive aspects of the [asserted] patent"); *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1311 (Fed. Cir. 2018) ("apportionment was required to reflect the value of the patented technology compared to the value of the unpatented elements"). Once more, the panel incorrectly asserted that Mr. McAlexander performed this analysis, Op.11, when he did not. *See infra* 17-18.

No decision from this Court has approved built-in apportionment under the circumstances sanctioned by the panel. This case highlights the faulty premises of "built-in apportionment" and presents an ideal vehicle to reconsider the "built-in apportionment" doctrine, or at minimum cabin its reach to the unique

- 14 -

circumstances identified in *CSIRO*.  Altria undisputedly introduced *no* actual evidence of apportionment.  So the jury had to assume built-in apportionment to reach its verdict.  And, while nonprecedential, the panel's rejection of Reynolds's challenges to Altria's apportionment testimony would permit the application of "built-in apportionment" to any prior license or negotiation so long as the patentee's expert says that a prior license is technically similar.  That result is plainly inconsistent with this Court's precedents on built-in apportionment.

### B.  The En Banc Court Should Clarify That Mere Technological Comparability Does Not Establish Built-in Apportionment.

Even if the en banc Court should decide not to reconsider "built-in apportionment," it should correct the erroneous apportionment instruction given in this case and blessed by the panel decision.  Op.12.  As this Court has explained, "while 'a damages theory that is dependent on a comparable license (or a comparable negotiation) *may in some cases* have built-in apportionment,' the license 'must be *sufficiently* comparable in that principles of apportionment were effectively baked into the purportedly comparable license.'"  *Roche*, 30 F.4th at 1123 (quoting *Omega*, 13 F.4th at 1377).  Accordingly, the proponent of a built-in apportionment theory must show more than the minimal, threshold technical and economic comparability required for the *admissibility* of a prior licensing agreement.  *See Lucent Tech., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327-32 (Fed. Cir. 2009); *Utah Med. Prods., Inc. v. Graphic Controls Corp.*, 350 F.3d 1376,

1385-86 (Fed. Cir. 2003). But the trial court erroneously equated the standard for built-in apportionment with the standard for consideration of comparable licenses by instructing the jury to apply built-in apportionment if it found the agreements merely ***technologically*** comparable. Appx146; Appx29282.[1] That instruction is contrary to this Court's cases finding that a prior license had built-in apportionment, which involved the ***same*** patents, the ***same*** licensed products or similar technology, the ***same*** parties, or a combination of these factors. *See CSIRO*, 809 F.3d at 1302-04; *Elbit*, 927 F.3d at 1300; *Pavo*, 35 F.4th at 1380; *Vectura*, 981 F.3d at 1040-41; *Bio-Rad*, 967 F.3d at 1374-77.

The Court should correct the panel's endorsement of this erroneous apportionment instruction, and the accompanying notion that technical comparability is all that is required to invoke built-in apportionment and satisfy the apportionment requirement. Otherwise, this instruction would now be fair game for every patent trial, contrary to the previous holdings of this Court.

## C. No Reliable Testimony Supported the Application of Built-in Apportionment in This Case.

Even if "built-in apportionment" complied with the Supreme Court's directive in *Garretson*, and even if the jury had been properly instructed, the en banc Court should rehear this case to correct the panel's erroneous holding that the

---

[1] As shown above, *supra* 8-9, the panel's recitation of the jury instruction was incorrect.

district court adhered to Federal Rule of Evidence 702 and *Daubert*, where no reliable testimony supported the application of built-in apportionment.

On the merits, once the panel's errors identified *supra* Part I are cleared away, it is obvious that the panel wrongly concluded that Altria's experts' testimony reliably supported the application of built-in apportionment. Op.11. For testimony to pass muster under Rule 702, the "data used" to estimate a reasonable royalty must be "sufficiently tied to the facts of the case" to ensure that it "is sufficiently reliable to support a damages award." *CSIRO*, 809 F.3d at 1301-02. A damages opinion that is based upon an unreliable apportionment methodology must be excluded. *See Exmark Mfg. Co. v. Briggs & Stratton Power Prods. Grp., Inc.*, 879 F.3d 1332, 1349-51 (Fed. Cir. 2018); *MLC*, 10 F.4th at 1374-75; *Virnetx*, 767 F.3d at 1328. The panel's decision concluding otherwise is incompatible with these prior decisions.

Reynolds challenged the admissibility of Mr. McAlexander's and Mr. Malackowski's testimony on an unapportioned rate for, among other things, failing to account for Alto's non-infringing features and attributing the value of conventional features to Altria's patents. Appx14465-14467. On the first point, Mr. McAlexander admitted that "there are a number of contributors to the success" of Alto that have nothing to do with Altria's patents, but he did not consider whether and to what extent those other contributions drove the commercial success

- 17 -

of Alto. Appx14492. For example, he attributed Alto's "smooth delivery" and "good vapor production" to the pod assembly design, Appx14656-14657, but he acknowledged that Alto's proprietary e-liquid and heater—neither of which is covered by the patents—also contribute to Alto's vapor production. Appx14487-14492; Appx14524-14525.

Moreover, Mr. McAlexander repeatedly attributed value to the asserted patents for features that were admittedly not novel—including transparent faces on a pod device, magnetic connections, electrical contacts, an audible click, and a pod-style e-cigarette. Appx14503-14506; Appx14510; Appx14512; Appx14514. Reynolds also challenged his ultimate opinion that Altria's patents are more valuable than the Fontem patents because it was based on the advantages of those conventional features, like a general pod design, which Altria did not invent. Appx14458-14459; Appx14480.

In short, because Mr. McAlexander offered only a "superficial recitation" of the advantages of the claimed patented invention and failed to isolate the value of Altria's patents over the prior art, his testimony was insufficient for admissibility. *Exmark*, 879 F.3d at 1350; *see also, e.g.*, *Omega*, 13 F.4th at 1381 ("[G]eneric testimony simply does not account for the technological and economic differences between the licenses and a hypothetical negotiation over a single, specific patent." (internal quotation omitted and alterations adopted)).

Mr. McAlexander testified that each of the five Fontem families he considered was technically comparable to Altria's patents because the Fontem patents are "directed to the electronic cigarette as a whole." *See, e.g.*, Appx28189. Even if this generic testimony were sufficient for threshold technical comparability, it does not account for the substantial differences between the licenses to Fontem's entire e-cigarette portfolio and the license that Reynolds would need here for Altria's single family of three patents. *See, e.g.*, *Omega*, 13 F.4th at 1380 ("[C]omparable licenses may cover more patents than are at issue in the action ....  But Omega was nonetheless required to account for such distinguishing facts when invoking [the licenses] to value the patented invention." (alteration in original) (internal citation and quotation marks omitted)).

## <u>CONCLUSION</u>

Panel or en banc rehearing should be granted.

Dated: February 4, 2025                    Respectfully submitted,


                                           /s/ Jason T. Burnette

John A. Marlott                            Jason T. Burnette
JONES DAY                                  Laura M. Kanouse
110 North Wacker Drive                     JONES DAY
Suite 4800                                 1221 Peachtree Street, N.E.
Chicago, IL 60606                          Suite 400
(312) 269-4236                             Atlanta, GA 30361
jamarlott@jonesday.com                     (404) 581-8724
                                           jtburnette@jonesday.com
                                           lkanouse@jonesday.com
John Franklin Morrow, Jr.
WOMBLE BOND DICKINSON
One West Fourth Street                     Alexis A. Smith
Winston-Salem, NC 27101                    JONES DAY
(336) 721-3584                             555 South Flower Street, 50th Fl.
john.morrow@wbd-us.com                     Los Angeles, CA 90071
                                           (213) 489-3939
                                           asmith@jonesday.com

                                           Amelia A. DeGory
                                           JONES DAY
                                           51 Louisiana Avenue, N.W.
                                           Washington, DC 20001
                                           (202) 879-3939
                                           adegory@jonesday.com

*Counsel for Defendant-Appellant R.J. Reynolds Vapor Company*

## **<u>CERTIFICATE OF COMPLIANCE</u>**

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned hereby certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2)(A).

1.      Exclusive of the exempted portions of this brief, as provided in Fed. Rules of Appellate Procedure 27(a)(2)(B) and 32(f) and Federal Circuit Rules 28(a)(12) and 32(b)(2), this brief includes a total of 3,897 words.

2.      This brief has been prepared in proportionally spaced typeface using Microsoft Word for Microsoft 365 in 14-point Times New Roman font.  The undersigned has relied upon the word count of this word-processing system in preparing this certificate.

Dated: February 4, 2025

Respectfully submitted,

*/s/Jason T. Burnette*
Jason T. Burnette

# Federal Rule Addendum

Federal Rule of Evidence 702

**Rule 702.  Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

# Panel Opinion

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALTRIA CLIENT SERVICES LLC,**
*Plaintiff-Appellee*

**v.**

**R.J. REYNOLDS VAPOR COMPANY,**
*Defendant-Appellant*

---

2023-1546

---

Appeal from the United States District Court for the Middle District of North Carolina in No. 1:20-cv-00472-NCT-JLW, Senior Judge N. Carlton Tilley, Jr.

---

Decided: December 19, 2024

---

MARK ANDREW PERRY, Weil, Gotshal & Manges LLP, Washington, DC, argued for plaintiff-appellee. Also represented by WILLIAM SUTTON ANSLEY, PRIYATA PATEL; ANISH R. DESAI, DANIEL LIFTON, ROBERT NILES-WEED, ELIZABETH WEISWASSER, New York, NY.

JASON BURNETTE, Jones Day, Atlanta, GA, argued for defendant-appellant. Also represented by LAURA KANOUSE; AMELIA A. DEGORY, Washington, DC; JOHN MARLOTT, Chicago, IL; ALEXIS ADIAN SMITH, Los Angeles,

CA; JOHN FRANKLIN MORROW, JR., Womble Bond Dickinson LLP, Winston-Salem, NC.

_____

Before PROST, BRYSON, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* PROST.

Opinion concurring in part and dissenting in part filed by *Circuit Judge* BRYSON.

PROST, *Circuit Judge.*

Altria Client Services LLC ("Altria") sued R.J. Reynolds Vapor Co. ("Reynolds") for infringement of U.S. Patent Nos. 10,299,517 ("the '517 patent"), 10,485,269 ("the '269 patent"), and 10,492,541 ("the '541 patent"). At trial, the jury found that Reynolds infringed Altria's patents and awarded Altria over $95 million in damages. The jury also rejected Reynolds's invalidity defense. The district court denied Reynolds's post-trial motions for judgment as a matter of law ("JMOL") on infringement and damages and a new trial on the issues of infringement, invalidity, and damages. *Altria Client Servs. LLC v. R.J. Reynolds Vapor Co.*, 650 F. Supp. 3d 375 (M.D.N.C. 2023) ("*Post-Trial Opinion*"). Reynolds appeals, and we affirm.

BACKGROUND

I

Altria's patents, which have similar specifications, "relate[] to electronic vapor devices including self-contained articles including vapor precursors." '517 patent col. 1 ll. 20–21.[1] These electronic vapor devices are, at a high level, electronic alternatives to cigarettes. Claim 1 of the '517 patent is illustrative and recites:

_____

[1] The '541 patent's specification has additional disclosures not relevant here.

ALTRIA CLIENT SERVICES LLC v.                    3
R.J. REYNOLDS VAPOR COMPANY

> A pod assembly for an e-vapor apparatus, comprising:
>
> *a plurality of external surfaces including a front face, a rear face opposite the front face, a first side face between the front face and the rear face, a second side face opposite the first side face, a downstream end face, and an upstream end face opposite the downstream end face*, a portion of at least the front face or the rear face being transparent, the downstream end face defining an outlet;
>
> a liquid compartment configured to hold a liquid formulation such that the liquid formulation is visible through at least the front face or the rear face;
>
> a vaporizer compartment in fluidic communication with the liquid compartment, the vaporizer compartment being adjacent to the upstream end face, the vaporizer compartment configured to heat the liquid formulation, the vaporizer compartment including a heater and a wick;
>
> a vapor channel extending from the vaporizer compartment, through a center of the liquid compartment, and to the outlet, the vapor channel being visible through at least the front face or the rear face; and
>
> a plurality of electrical contacts having respective planar surfaces at the upstream end face and electrically connected to the heater in the vaporizer compartment, the vapor channel being between the outlet and the plurality of electrical contacts.

*Id.* at claim 1 (emphasis added).

II

Altria sued Reynolds for infringing the '517, '269, and '541 patents. The accused product is Reynolds's VUSE Alto, a pod-style device. At the claim-construction stage of this case, Reynolds argued that "the front and rear faces" present in each claim "are distinct surfaces, which are each bounded by one or more edges." J.A. 1749. Altria proposed a plain-and-ordinary-meaning construction, arguing that the patents "use the term 'face' consistent with its ordinary meaning—the surface of an object." J.A. 1803. The district court agreed with Reynolds, concluding that "there must be an edge between the front face and side faces, and the rear face and side faces." J.A. 4033.

The case proceeded to trial, and the jury found that Reynolds infringed claims 1, 9, and 10 of the '517 patent, claim 19 of the '269 patent, and claim 24 of the '541 patent. J.A. 111. The jury also found that Reynolds did not show that any of the asserted claims are invalid. J.A. 112. The jury awarded $95,233,292 in damages "for past infringement through June 30, 2022." J.A. 113.

Reynolds moved for JMOL, arguing that substantial evidence did not support the finding that the VUSE Alto had the requisite edge between its faces and that there was not substantial evidence to support the jury's damages award. *Post-Trial Opinion*, 650 F. Supp. 3d at 385. Reynolds also moved for a new trial on invalidity based on "erroneous evidentiary rulings" and a new trial on damages, contending "that the jury's damages award stems from legal error." *Id.* at 401. The district court denied Reynolds's motions for JMOL and a new trial, *id.* at 412, and entered final judgment, J.A. 105–08.

Reynolds appeals, and we have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Reynolds raises four issues on appeal. First, Reynolds argues that the district court erred in denying its motion for JMOL or a new trial on infringement. Second, Reynolds argues that the district court improperly excluded evidence of its invalidity defense and that a new trial on invalidity is warranted. Third, Reynolds argues that, given its challenge to the calculation of a per-unit royalty rate from a comparable license, the district court improperly denied its motion for JMOL or a new trial on damages. Fourth, Reynolds argues that the district court improperly allowed the jury to hear testimony from Altria's damages expert on apportionment and that this error requires JMOL or a new trial. We address each issue in turn.

We review a district court's procedural rulings under the standard of the regional circuit. *MLC Intell. Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1367 (Fed. Cir. 2021). The Fourth Circuit reviews a district court's denial of a motion for JMOL de novo. *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 279 (4th Cir. 2021). The Fourth Circuit reviews a district court's decision on whether to grant a new trial for abuse of discretion. *Mountain Valley Pipeline, LLC v. 8.37 Acres of Land by Terry*, 101 F.4th 350, 358 (4th Cir. 2024).

I

We begin with Reynolds's challenge to the infringement verdict. Reynolds argues that the evidence presented at trial does not support the jury's finding that the accused VUSE Alto has the requisite edge between the claimed faces. We disagree.

Altria presented ample evidence that Reynolds's VUSE Alto meets this limitation. As Altria's infringement expert explained:

But if—but if you just take the pod and hold it in your hands, . . . and just rotate it between my

> fingers, you can easily see, as you traverse from a
> front face to a side face, to a rear face, to a side face,
> to a front face, you can feel the edges. You can feel
> the transition between the different faces. And not
> only can you feel it, but you can see it. I mean,
> there is clearly edges. And they're rounded edges
> going from one face to the next.

J.A. 28141 (255:17–25). A photograph of the accused product itself clearly shows an edge between the different faces. J.A. 29493. The jury was even given physical samples of the VUSE Alto where they could feel the edge. J.A. 28133. And if that were not enough, Reynolds's expert admitted that a rounded edge, like the edges on the VUSE Alto, would constitute an edge between faces. J.A. 28767 (777:6–7) ("[E]very edge is rounded at some degree."); *see also* J.A. 28767 (777:13–15) ("In a practical world, yes. There's no way you can get something perfectly—I mean, at some—it's always rounded. But it doesn't matter for a lot of products, obviously.").

On this record, there is "no reason why jurors would have been unable to determine for themselves" that Altria established that the VUSE Alto meets the edge limitation, especially where "the technology at issue [is] easily understandable," as it is here. *Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1292 (Fed. Cir. 2023). We thus affirm the district court's order denying Reynolds's motions for JMOL of noninfringement and a new trial on infringement.

## II

We next proceed to Reynolds's challenge to the district court's exclusion of its invalidity evidence.

Reynolds offered several invalidity theories at trial. One sought to establish, using a JUUL electronic cigarette device, that "the claimed invention was . . . in public use . . . before the effective filing date of the claimed invention."

35 U.S.C. § 102(a)(1).   Before trial, the district court excluded much of Reynolds's evidence on hearsay grounds, a ruling that Reynolds does not challenge on appeal.  After excluding that evidence as hearsay, the district court was left with a muted video that Reynolds purports shows the JUUL product.  The district court also excluded this video, stating:

> Again, if you just—I mean, it's set up to suggest that it is the [JUUL] device, but then the next thing you see is somebody holding it in profile, and you can't identify from that profile whether it's the [JUUL] device or not.  I cannot find it sufficiently suggestive to come into evidence.

J.A. 27611 (80:10–15).

Reynolds challenges the district court's exclusion of the video.  We review this ruling for abuse of discretion. *Mathis v. Terra Renewal Servs., Inc.*, 69 F.4th 236, 246 (4th Cir. 2023).   One prerequisite for admissibility is that "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Here, all Reynolds has shown is that a video contains some opaque, rectangular device that can be used as an electronic cigarette.  Reynolds identifies nothing in the video itself showing that the device is a JUUL device.  With nothing more in the record to explain what appears in this video (as Reynolds did not challenge the exclusion of other potentially informative evidence on appeal), we cannot say that the district court abused its discretion in excluding the video.

### III

We now turn to Reynolds's challenge to the calculation of a per-unit royalty rate from comparable licenses. Reynolds argues that the jury lacked sufficient evidence to conclude that the licenses at issue used a 5.25% royalty rate.

We first note that Reynolds did not challenge this portion of Altria's damages expert's testimony under Federal Rule of Evidence 702. Thus, we do not view Reynolds as challenging the particular methodology Altria's expert employed. Instead, we simply review this as a challenge to the evidentiary basis of the 5.25% royalty rate. "A jury's damages award must be upheld unless the amount is grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Bio-Rad Labs., Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1373 (Fed. Cir. 2020) (cleaned up).

Altria offered several theories supporting the proposition that a comparable license used a 5.25% royalty rate, and it suffices for our purposes to identify one supported by the evidence. Altria sought to use a comparable license to prove its damages. One was a license between two companies, Fontem and Nu Mark. One part of this license is a lump-sum payment from Nu Mark to Fontem of $43 million granting Nu Mark the right to practice Fontem's patents in the United States until at least 2030. To calculate the effective per-unit royalty rate from this lump-sum payment, Altria's damages expert relied on a projection made by Nu Mark. This projection applied a 5.25% royalty to sales from 2017 to 2023 and resulted in $44 million of estimated royalties. J.A. 28365–66. Thus, Altria's expert, noting the similarity between the $43 million lump-sum payment and the $44 million in projected sales, concluded that the $43 million lump-sum payment in the Fontem-Nu Mark license was calculated using a 5.25% per-unit royalty rate.

Reynolds offers two principal arguments for why sufficient evidence does not support the finding that the $43 million lump-sum payment reflects a 5.25% per-unit royalty rate. We find neither persuasive.

First, Reynolds contends that Altria's expert relied on the wrong projection, instead asserting that Altria's expert

should have used a different sales projection to arrive at a potential per-unit royalty rate. In the absence of a challenge to the methodology employed by Altria's expert in calculating the per-unit royalty rate, however, we confine ourselves to examining whether the jury had sufficient facts "with which to recalculate in a meaningful way the value of any of the [lump-sum] agreements to arrive at the . . . damage award." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1330 (Fed. Cir. 2009). The jury was presented with expert testimony explaining multiple different sales projections that the jury could use to "deriv[e] a [per-unit] rate from the lump-sum payments and projected sales." *MLC Intell. Prop.*, 10 F.4th at 1368. Given that Reynolds did not object to the admission or use of these projections, "[t]he jury was entitled to hear the expert testimony and decide for itself what to accept or reject." *i4i Ltd. P'Ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). We conclude that Altria's projection-based theory provides a sufficient evidentiary basis for a 5.25% per-unit royalty rate. As such, we need not reach Altria's other theories, including its contentions that the Fontem-Nu Mark license reflects a 5.25% per-unit royalty rate on its face and in several clauses, and that an additional license between two companies, Fontem and Reynolds, also supports a 5.25% per-unit royalty rate. *See* J.A. 29385–439; J.A. 29667–841.

Second, Reynolds argues that the maximum per-unit royalty rate the jury could calculate from the licenses in this record was 3.6%, or perhaps 2.1%. Reynolds and Altria presented the jury with several different per-unit royalty rates likely supportable on this record—5.25%, 3.6%, 2.1%, and 0.21%. In the face of this competing testimony, and again in the absence of an objection from Reynolds on the methodology that Altria's expert used to calculate a per-unit rate in a comparable license, we conclude that the jury could decide for itself which royalty rate best fit the facts of this case. We thus affirm the district court's denial of

JMOL and denial of a motion for a new trial on damages based on the per-unit royalty rate.

## IV

We finally address Reynolds's challenges to apportionment. Reynolds argues that Altria's damages expert offered unreliable apportionment testimony and thus that the district court erred by not excluding it under Federal Rule of Evidence 702, by not granting Reynolds's motion for a new trial on damages, and by not granting Reynolds's motion for JMOL.

"No matter what the form of the royalty, a patentee must take care to seek only those damages attributable to the infringing features." *VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1326 (Fed. Cir. 2014). A common model, the one Altria used in this case, "begins with rates from comparable licenses and then accounts for the differences in the technologies and economic circumstances of the contracting parties" to value the asserted patents. *Commonwealth Sci. & Indus. Rsch. Org. v. Cisco Sys., Inc.*, 809 F.3d 1295, 1303 (Fed. Cir. 2015) (cleaned up).

Here, Altria offered a detailed accounting for differences in the economic and technological circumstances of the contracting parties and explained how it valued Altria's patents. Altria's technical expert began by looking at the licensed technology in the Fontem-Nu Mark license and separating it into thirteen groups of patents. J.A. 28185. The technical expert gave four groups of these patents zero value because they reflected abandoned patent applications. J.A. 28185. He gave three other groups only nominal value because they were directed to small components of an e-cigarette device. J.A. 28185–86. He also gave a family of design patents nominal value as trivial to design around. J.A. 28186. For the remaining five patent families, Altria's technical expert examined the importance of the patents to the e-cigarette device licensed in the Fontem-Nu Mark license and

ALTRIA CLIENT SERVICES LLC v.                                    11
R.J. REYNOLDS VAPOR COMPANY

concluded that, because the five patent families covered the key features of an e-cigarette device, selling an e-cigarette device would necessarily require practicing Fontem's patents. J.A. 28188–92. Altria's technical expert also testified that Altria's patents covered the key features of a pod vapor device and thus that selling a pod vapor device would necessarily require practicing Altria's patents. J.A. 28192. Thus, Altria's technical expert concluded that the importance of the licensed patents to the Fontem-Nu Mark license were similar to the importance of Altria's patents to the hypothetical negotiation.

Altria's damages expert considered this testimony and then accounted for how the similarities and differences in licensed products and economic circumstances between the Fontem-Nu Mark license and the hypothetical negotiation to value Altria's patents. The damages expert accounted for similar markets between the licensed e-cigarette device in the Fontem-Nu Mark license and Reynolds's VUSE Alto, noting that the VUSE Alto was "a relatively significant success" and that "the sales of the prior products actually declined." J.A. 28358 (434:19–22). Altria's expert also, based on the technical expert's testimony, concluded that the importance of the patented features to Nu Mark was similar to the technical importance of the patented features from Altria's patents to the VUSE Alto. Altria's damages expert then accounted for these similarities and differences and ended at a damages amount that would reflect "the contributions that are made by Altria" (i.e., the patented features) and would leave Reynolds the rest of the value, including the value from unpatented features and Reynolds's business contributions. J.A. 28371–72 (447:15–448:2).

Reynolds presents several challenges to the methodology and evidentiary basis for Altria's damages expert's apportionment testimony. What Reynolds's challenges amount to, though, are disagreements with the particular adjustments that Altria's damages expert made

12                    ALTRIA CLIENT SERVICES LLC v.
                      R.J. REYNOLDS VAPOR COMPANY

to the royalty rate in the Fontem-Nu Mark license. While our law requires Altria to "account for differences in the technologies and economic circumstances of the contracting parties," *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010), we do not require any specific adjustment to a royalty rate based on those differences. Rather, what matters is that Altria's damages expert employed "reliable principles and methods," Fed. R. Evid. 702(c), that were "based on sufficient facts or data," *id.* 702(b), and that the expert's opinion "reflects a reliable application of principles and methods to the facts of the case," *id.* 702(d). Reynolds has not shown that the district court abused its discretion in concluding that Altria's damages expert employed a reliable methodology based on sufficient facts and data in presenting an ultimate damages amount that "reflect[s] the value attributable to the infringing features of the product, and no more." *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014).

We likewise reject Reynolds's challenge to the apportionment jury instruction. The district court did not misstate the law but rather properly instructed the jury that it must account for the differences between the Fontem-Nu Mark license and the hypothetical negotiation between Altria and Reynolds. And the district court did not err in instructing the jury that, if it found that Altria demonstrated sufficient comparability between the circumstances of the Fontem-Nu Mark license and the hypothetical negotiation, the jury could accept Altria's damages expert's proposed adjustments to the royalty rate. We thus affirm the district court's denial of Reynolds's motion to exclude the apportionment testimony under Rule 702, motion for a new trial, and motion for JMOL on damages.

CONCLUSION

We have considered Reynolds's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the district court's order denying Reynolds its requested post-trial relief.

**AFFIRMED**

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALTRIA CLIENT SERVICES LLC,**
*Plaintiff-Appellee*

**v.**

**R.J. REYNOLDS VAPOR COMPANY,**
*Defendant-Appellant*

---

2023-1546

---

Appeal from the United States District Court for the Middle District of North Carolina in No. 1:20-cv-00472-NCT-JLW, Senior Judge N. Carlton Tilley, Jr.

---

BRYSON, *Circuit Judge*, concurring in part and dissenting in part.

I join parts I, II, and IV of the court's opinion.  With respect to part III of the opinion, however, I respectfully dissent.

 The court's opinion relies on the Fontem-Nu Mark license, under which Nu Mark paid Fontem a lump sum of $43 million for the right to practice Fontem's patents until at least 2030.  Altria's expert noted that Nu Mark prepared a number of projections.  One projected a level of sales under that license between 2017 and 2023 that would yield

a total royalty payment of $44 million at a royalty rate of 5.25%. Altria's expert testified that the similarity between the $43 million actually paid under the Fontem-Nu Mark license and the $44 million expected to be paid at a royalty rate of 5.25% for the years 2017 through 2023 gave him "great confidence" that the 5.25% rate "was the real benchmark." App. 28366.

The problem with that line of analysis is that the $44 million projected royalty payment was based on projected sales only through 2023, while the $43 million actually paid for the license was for rights extending all the way to 2030, seven more years than the 2017–2023 period. What that means is that if the projected sales for 2024 through 2030 were similar to the projected sales from 2017 through 2023, the $43 million paid for the license would represent a royalty rate of only about half the 5.25% claimed by Altria. *See* App. 28403. Put another way, Altria's expert attributed the entire $43 million in royalties to the first seven years of projected sales, rather than spreading out the royalties over the entire Fontem license period.[1] Altria pointed to no basis in the record to ignore the years between 2024 and 2030, so the expert's testimony on the Fontem-Nu Mark license provides no support for the 5.25% royalty figure adopted by the jury.

Altria identifies various other pieces of evidence that it argues support the 5.25% royalty rate. Like the majority, however, I view the Nu Mark projections as the strongest piece of evidence as to the proper royalty rate. The

---

[1] The fact that Nu Mark prematurely withdrew from the market after entering into the agreement does not change the relevant timeframe for evaluating the agreement, as the parties have identified no evidence suggesting that Nu Mark's later decision to withdraw factored into the negotiations over the terms of the agreement.

ALTRIA CLIENT SERVICES LLC v.                    3
R.J. REYNOLDS VAPOR COMPANY

remaining pieces of evidence are not sufficient to support the jury's verdict.

I would therefore grant a new trial to Reynolds on the damages issue unless Altria agreed to a remittitur of approximately half of the $95.3 million award.